**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-12-01660-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| John Rowland Mills, | |
| Defendant. | |

Pending before the Court is Defendant John Rowland Mills' ("Mills") Motion for Judgment of Acquittal (Doc. 112).

**I.   BACKGROUND**

Mills was charged with fifteen counts of wire fraud pursuant to 18 U.S.C. § 1343. (Doc. 1). Beginning in December 2006, Mills was a member of a political committee for Jim Weiers ("Weiers"), a candidate for State of Arizona House of Representatives. (Doc. 144 at 3). As part of the political committee, Mills was a joint member, with Weiers designated as the primary member, on a campaign account at the Arizona Federal Credit Union opened in January 2007 (the "Campaign Account"). *Id.* at 4. The Campaign Account was maintained for Weiers' 2008 Campaign, and Mills performed all of the accounting. *Id.* at 8. Around 2007 Mills faced financial difficulty, and around the same time, Mills began to withdraw money from the Campaign Account for personal living expenses and investments. *Id.* at 6. Over the course of fourteen months, Mills made twenty-eight withdrawals from the Campaign Account. *Id.* at 9. Mills deposited the

money from the Campaign Account into his personal account at the Arizona Federal Credit Union. *Id.* at 6. Afterward, Mills transferred the money for personal expenses and investments to accounts held by companies in other states. *Id.* In 2008, Mills filed six campaign finance reports that contained false information such as cash balances in the Campaign Account and interest earned on the cash balances. *Id.* at 9–10. Finally, on October 31, 2008, Mills used a wire transmission to transfer $100,000 back into the Campaign Account from a Florida bank account. *Id.* at 9. Mills replaced the money through the wire transmission almost immediately before the election on November 4, 2008. *Id.* After Mills' withdrawals were discovered, the FBI interviewed Mills. *Id.* at 7. Mills stated that he took money from the Campaign Account for personal use, but that he intended to repay the money. *Id.* at 8. Mills also stated that he knew that the money in the Campaign Account would not be needed to pay campaign expenses until just before election day. *Id.* On July 23, 2013, a jury convicted Mills on nine counts of wire fraud pursuant to 18 U.S.C. § 1343. (Doc. 103). Counts 1, 3, 4, 6, 9, 12, 13, and 14 involved interstate wire transfers from Mills' personal account, and Count 15 involved an interstate wire transfer into the Campaign Account. *Id.* The jury acquitted Mills on six counts. *Id.* On August 8, 2013, Mills filed a Motion for Judgment of Acquittal (Doc. 112).

**II.     ANALYSIS**

Federal Rule of Criminal Procedure Rule 29(c)(1) relevantly states that "[a] defendant may move for a judgment of acquittal . . . within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." In ruling on the motion, the Court must view the evidence in the light most favorable to the prosecution, and after viewing the evidence, the Court must evaluate whether any rational juror could have concluded that the elements of the crimes were proved beyond a reasonable doubt. *See United States v. Alarcon-Simi*, 300 F.3d 1172, 1176 (9th Cir. 2002).

The wire fraud statute punishes conduct by a person who, "having devised or intending to devise any scheme or artifice to defraud . . . transmits or causes to be

transmitted by means of wire . . . communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice . . . ." 18 U.S.C. § 1343 (2012). "Wire fraud has three elements: (1) a scheme to defraud; (2) use of the wires in furtherance of the scheme; and (3) a specific intent to deceive or defraud." *United States v. Shipsey*, 363 F.3d 962, 971 (9th Cir. 1986) (citing 18 U.S.C. § 1343). "[T]o be in furtherance of a scheme, the charged mailing or wire transmission need not be an essential element of the scheme, just a 'step in the plot.'" *United States v. Garlick*, 240 F.3d 789, 795 (9th Cir. 2001) (quoting *Schmuck v. United States*, 489 U.S. 705, 711 (1989)). As a result, "[a] wire communication is "in furtherance" of a fraudulent scheme if it is 'incident to the execution of the scheme.'" *United States v. Jinian*, 725 F.3d 954, 960 (9th Cir. 2013) (quotation omitted). "Thus, the relevant question at all times is whether a wire is part of the execution of the scheme as conceived by the perpetrator at the time." *Id.* (citation and internal quotation omitted).

In the Motion, Mills asserts that the use of wires in this case was not necessary or essential to the scheme of embezzling Campaign money. Mills further asserts that the essential acts to his scheme to embezzle were his acts of forgery, filing fraudulent campaign finance statements, and failing to disclose his acts to Weiers. (Doc. 112 at 3–4). Mills claims that he accomplished these essential acts without interstate wires. *Id.* Thus, Mills argues that the second element of wire fraud is not met because his use of the wires was not "in furtherance" of his scheme. *Id.* The Government responds that Mills engaged in a multi-year scheme to steal money from the Campaign Account and then repay the stolen money to avoid detection. (Doc. 114 at 12). To repay the monies, Mills used interstate wires "in furtherance" of his wire fraud scheme. As a result, the Government argues that Mills' conduct constitutes wire fraud under 18 U.S.C. § 1343.

Accordingly, the Court first considers whether the interstate wire transfers of Counts 1, 3, 4, 6, 9, 12, 13, and 14 were made "in furtherance" of a fraudulent scheme. If the Court individually views the wire transfers, the scheme was complete upon Mills' deposit into his personal account, and the subsequent transfers were merely a means of

using the stolen money. *United States v. Redcorn*, 528 F.3d 727, 738–42 (10th Cir. 2008) (holding that the defendants' scheme was complete when they deposited stolen funds into their personal accounts, and that the interstate wire transfer of their stolen funds from their personal account for an investment was not an essential part of their scheme); *see also United States v. Phillips*, 704 F.3d 754, 763 (9th Cir. 2012) (finding that the defendant's use of the stolen funds, after deposit into his personal account, did not in any way effect the scheme to defraud). Conversely, if the Court views the wire transfers as steps in Mills' plot of an ongoing scheme to steal money temporarily from the Campaign Account to pay personal expenses and to invest the stolen money with the intent to repay, then the wire transfers constitute wire fraud. *Jinian*, 725 F.3d 954, 961–64 (9th Cir. 2013) (holding that interstate wire transmissions between defendant's bank and the Federal Reserve Bank to clear the fraudulent checks, after defendant deposited the stolen funds, constituted wire fraud because defendant engaged in an ongoing scheme, and viewed individually, defendant's scheme depended on the success of the wire transmissions); *see also United States v. Mills*, 199 F.3d 184, 188–90 (5th Cir. 1999) (if part of an ongoing scheme, interstate wire communications between banks to facilitate a defendant's transfer of stolen money from his personal account to a bank account in another state constitute wire fraud). Ironically, Mills' intention to repay the stolen money and actual repayment is the evidence the government relies on to argue that each transfer between the original withdrawal and ultimate repayment were part of an ongoing scheme.

Although Mills' scheme to defraud was ongoing and was not a one-time operation, the interstate wire transfers for personal expenses and investments were not necessary for the long-term success of the fraud. The interstate wire transfers from Mills' personal account are, at most, tangentially related to the fraud of stealing money from the Campaign Account. While the scheme did not reach fruition until Mills transferred $100,000 back into the Campaign Account, unlike *Jinian* and *Mills* the scheme did not rely on the transfers from Mills' personal account to conceal the fraud or to perpetuate the fraud. Therefore, these transfers were neither necessary nor essential to the fraud.

Because these wire transfers were only tangentially related to the scheme, a rational jury could not conclude that Counts 1, 3, 4, 6, 9, 12, 13, and 14 constituted wire fraud.

However, a rational jury could conclude that Mills' wire transfer of $100,000 back into the Campaign Account, Count 15, constituted wire fraud. Mills took several measures beyond the final transfer to conceal his withdrawals from the Campaign Account. To avoid detection, Mills filed fraudulent campaign statements to conceal the missing money to continue the scheme for over one year. Moreover, Mills stated that he believed he would pay the money back through investments he made with the Campaign Account money to conceal the scheme. (Doc. 114 at 8). In addition to Mills' stated intent, Mills transferred the money back into the Campaign Account from a Florida account in October 2008, just before the November 4 election day. This transfer initially concealed Mills' previous withdrawals because the bulk of the money was needed on election day. Overall, Mills' conduct shows that he intended to conceal his scheme, and Mills depended on the final transfer back into the Campaign Account to conceal his withdrawals just before Weiers would notice the missing money. As a result, there is sufficient evidence for a jury to conclude that to complete the scheme Mills used an interstate wire to transfer $100,000 back into the Campaign Account.

While Mills cites *United States v. Maze* to support the proposition that his scheme did not depend on the wire transmission at issue, the case is distinguishable. 414 U.S. 395 (1974). In *Maze*, the defendant used a stolen credit card to pay for hotel rooms. *Id.* at 396. Afterward, the hotel mailed sales slips to the bank that issued the credit card. *Id.* The Government argued that the defendant's conduct constituted mail fraud because he knew that these mailings would occur, and thus he used mailings to execute his scheme. *Id.* at 397. However, the Court noted that the defendant did not design the mailings to lull his victims or delay reporting by his victims because the mailings actually increased the chance that the bank would detect the defendant's scheme. *Id.* at 403. Thus, the defendant's scheme did not depend on the mailings because his scheme reached fruition when he checked out of the hotel. *Id.* In this case, Mills' actually designed the transfer

of money back into the Campaign Account to lull his victim.[1] In sum, Mills' conduct shows that he executed an ongoing scheme to defraud Weiers that did not end when Mills deposited the Campaign Account money into his personal account. The scheme did not cease upon these deposits because Mills from the beginning intended to avoid detection. Thus, Mills' ability to perpetuate his scheme depended on avoiding detection by transferring money back into the account. Because Mills attempted to conceal his scheme by an interstate wire, a rational jury could have concluded that Mills used an interstate wire to perpetuate his fraudulent scheme.

### III.   CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that Mills' Motion for Judgment of Acquittal (Doc. 112) is granted in part and denied in part. The Motion is granted on Counts 1, 3, 4, 6, 9, 12, 13, and 14. The Motion is denied as to Count 15.

Dated this 1st day of November, 2013.

James A. Teilborg
Senior United States District Judge

---

[1] *United States v. Phillips*, 704 F.3d 754 (9th Cir. 2012) and *United States v. Redcorn*, 528 F.3d 727 (10th Cir. 2008) also differ from Mills' case on this point because in these cases the defendants committed theft without the intent to repay the money to avoid detection or lull the victim.